IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

[1] AKINDE THOMAS CHALWELL,
[2] JEROME NIBBS, and
[3] JOSE ACOSTA,

**Defendants.**

CRIM. NO. 22-340 (RAM)

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the *Motion to Dismiss Based on Violation of Statutory Speedy Trial Act* (*"Speedy Trial Motion"*) filed by Defendants Akinde Thomas Chalwell ("Chalwell"), Jerome Nibbs ("Nibbs"), and Jose Acosta ("Acosta"). (Docket No. 124). Having reviewed the parties' filings, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Defendants' *Speedy Trial Motion*. The Indictment at Docket No. 14 is **DISMISSED WITHOUT PREJUDICE**.

## I.   BACKGROUND

On June 16, 2022, the U.S. Coast Guard encountered a go-fast vessel near Saint Thomas. (Docket No. 1-1 ¶ 7). While in pursuit of the vessel, Coast Guard personnel saw its occupants jettison approximately thirty packages, of which three were later recovered and field-tested positive for cocaine. <u>Id.</u> ¶¶ 9, 11. The at-sea weight of the recovered packages was approximately ninety

kilograms, suggesting that the approximate total amount of cocaine being smuggled was nine hundred kilograms. Id. ¶ 12. The three occupants of the boat—Messrs. Chalwell, Nibbs, and Acosta—were detained. Id. ¶ 5, 11. On July 22, 2022, thirty-six days later, Defendants were charged by complaint, arrested, and brought before a magistrate judge in this district.

Six days after the initial appearance, a Grand Jury returned a three-count Indictment charging Defendants with maritime drug trafficking crimes on July 28, 2022. (Docket No. 14). Mr. Nibbs and Mr. Acosta were arraigned on August 5, 2022, when they entered pleas of not guilty. (Docket Nos. 25 and 26). Mr. Chalwell was arraigned a week later, on August 12, 2022, because he requested (1) a continuance to prepare for his bail hearing and arraignment; and (2) that the hearing be held in person rather than through a video teleconference system. (Docket Nos. 21-24, 32).

Defendants filed several pretrial motions in this case, including two other motions to dismiss.[1] (Docket Nos. 43 and 91). On October 19, 2023, the Defendants filed the instant *Speedy Trial Motion*, *pro se*. (Docket No. 124). They raise a claim pursuant to the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161-3174, and argue

---

[1] The Honorable Francisco A. Besosa denied the two motions to dismiss. (Docket Nos. 79 and 112). The case was transferred to the undersigned on November 6, 2023, upon Judge Besosa's recusal. (Docket No. 134).

that between August 12, 2022 to November 14, 2022, there were ninety-five days of non-excludable time, beyond the seventy days permitted by the post-indictment provision of the STA. Defendants further invoked the Sixth Amendment speedy trial right, referencing the Supreme Court's decision in Barker v. Wingo, 407 U.S. 514, 530 (1972). Counsel for Mr. Nibbs adopted the *pro se Speedy Trial Motion*, and the Court ordered further briefing. (Docket Nos. 139 and 140).

On December 11, 2023, the United States of America (the "Government") filed its response, contending that the Defendants miscount the days during which the speedy trial clock was tolled. (Docket No. 149). By the Government's accounting, there have been twenty-seven days of non-excludable delay. The Government further argues that even if there had been a violation of the STA, the indictment should be dismissed without prejudice.

The attorneys for all three Defendants filed replies, joining the original *Speedy Trial Motion*. (Docket Nos. 160-162). Mr. Nibbs raises—for the first time—the issue of whether there were STA violations during the pre-indictment period. (Docket No. 160). He also avers that 133 non-excludable days have elapsed between February 24, 2023, and July 10, 2023. Id. ¶ 9. As a result, Mr. Nibbs claims that the length of his detention should trigger an automatic review under 18 U.S.C. 3164. Id. ¶ 11. Finally, he argues

that even if there is no statutory speedy trial violation, the
Court should find that the Sixth Amendment's speedy trial right
was contravened. Id. ¶¶ 10-13. Mr. Acosta takes the position that
the seventy-day post-indictment speedy trial clock began on the
day of his arraignment, not that of Mr. Chalwell's. (Docket No.
161). Finally, Mr. Chalwell also contends there were pre-
indictment violations of the STA. (Docket No. 162).

## II.  The Sixth Amendment Speedy Trial Right

The Sixth Amendment provides that "[i]n all criminal
prosecutions, the accused shall enjoy the right to a speedy and
public trial." U.S. Const. amend. VI. "The right attaches upon
arrest or indictment, whichever occurs first." United States v.
Santiago-Becerril, 130 F.3d 11 at 21 (1st Cir. 1997). If the right
has been violated, the only possible remedy is dismissal of the
indictment with prejudice. Strunk v. United States, 412 U.S. 434,
440 (1973).

In Barker, the Supreme Court laid out a four-part balancing
test to determine if the Sixth Amendment speedy trial right had
been violated. 407 U.S. at 530-33. The district court should
consider: (1) the length of the delay; (2) the reasons for the
delay; (3) the defendant's assertion of his right; and (4) the
prejudice to the defendant. Id. at 530. "None of these factors is
'either a necessary or sufficient condition to the finding of a

deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" United States v. Henson, 945 F.2d 430, 437 (1st Cir. 1991) (quoting Barker, 407 U.S. at 533).

## A. Length of the Delay

The first Barker factor serves both as "a triggering mechanism for the rest of the [speedy trial] analysis, and a factor in that analysis." United States v. Carpenter, 781 F.3d 599, 609 (1st Cir. 2015) (citation omitted). Thus, to trigger an inquiry as to a Sixth Amendment speedy trial violation, a defendant must allege that the length of delay "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." United States v. Irizarry-Colón, 848 F.3d 61, 68 (1st Cir. 2017) (quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992)). If the defendant establishes that the delay was presumptively prejudicial, the district court considers the excessiveness of the delay as one factor among several. See United States v. Handa, 892 F.3d 95, 101 (citations omitted).

Delay of around one year is presumptively prejudicial. See id. at 102. Here, the speedy trial clock for Sixth Amendment purposes began to run upon the Defendants' arrests on July 22, 2022. See (Docket Nos. 2-4). The Court considers the period between

that date[2] and the current date, as trial has not commenced in this case, yielding a total elapsed time of approximately nineteen months. In United States v. Muñoz-Amado, a case involving a similar underlying offense, the First Circuit found that a nineteen-month delay was presumptively prejudicial. 182 F.3d 57, 61 (1st Cir. 1999). However, given that the underlying crime was "more complicated than 'an ordinary street crime' but less so than 'a serious, complex conspiracy charge,'" the First Circuit concluded that the period of delay only "tip[ped] the scales slightly in favor of [the defendant's] claim." Id. (quoting Barker, 407 U.S. at 531).

The same is true in this case. Defendants have shown that the delay is presumptively prejudicial, thereby triggering the remainder of the Sixth Amendment speedy trial analysis. However, this factor contributes only a small weight in their favor.

**B. Reason for the Delay**

The second factor is the "focal inquiry" of the speedy trial analysis. Santiago-Becerril, 130 F.3d at 22 (citation omitted). A

---

[2] Defendants appear to argue that they were instead arrested on June 16, 2022, when they were encountered by the Coast Guard at sea, in the context of their pre-indictment STA claim. (Docket No. 160 ¶ 6). With regard to the analysis of the Sixth Amendment speedy trial right, the Court assumes that the arrest date was July 22, 2022. Further, even assuming that the arrest date was June 16, 2022, adding an additional thirty-six days to the Barker calculation, the additional period of time would not change the Court's conclusion as to the weight given to the length of delay.

district court must determine if delays were attributable to the defendant or to the government. United States v. Souza, 749 F.3d 74, 82 (1st Cir. 2014). "Delays sought by defense counsel are ordinarily attributable to the defendants they represent." Id. (internal alteration and citation omitted). As to the role of the government, deliberate delays weigh heavily in favor of the defendant, while prosecutorial negligence carries less weight. United States v. Perez-Cubertier, 958 F.3d 81, 90 (1st Cir. 2020).

In reviewing the record of this case, the Court finds that much of the delay is due to Defendants' filing of successive pretrial motions and the time it took the Court to decide those motions. Defendants' motions included: (1) two motions for continuance of a bail hearing, (Docket Nos. 24 and 32); (2) a motion to dismiss, (Docket No. 43); (3) two motions for an evidentiary hearing, (Docket Nos. 54 and 60); (4) a successive motion to dismiss the indictment, (Docket No. 91); (5) two motions for extension of time, (Docket Nos. 105 and 110); (6) a motion for continuance, (Docket No. 116); and (7) two *pro se* discovery motions (Docket Nos. 119 and 127). Following the filing of the instant *Speedy Trial Motion*, Mr. Chalwell and Mr. Acosta have also sought appointment of new counsel. (Docket Nos. 150 and 151). When defendants file many pretrial motions, the First Circuit has found that their actions contribute to delay. *See* Souza, 749 F.3d at 82;

United States v. Muñoz-Franco, 487 F.3d 25, 60 (1st Cir. 2007);
Muñoz-Amado, 182 F.3d at 62. Moreover, Defendants have not "sought
relief from delays" caused by their co-defendants "by requesting
a severance." Santiago-Becerril, 130 F.3d at 22.

The record does indicate that the Government required some
time to turn over initial discovery to the defense. *See* (Docket
No. 38). Second, the Government requested and received an extension
of time to file a sur-reply, (Docket Nos. 55 and 58), and a
response. (Docket Nos. 97 and 99). In reviewing the docket and the
filings, the Court can discern no bad faith on the part of the
Government. Nor have Defendants presented proof of deliberateness
of the Government's conduct. *See* Souza, 749 F.3d at 82 (finding
that medical leave of an agent needed to produce documents and
need for government to maintain continuity of counsel were valid
reasons that justify an appropriate delay).

The Court also recognizes the length of time that elapsed
when deciding the Defendants' first motion to dismiss, and thus
the Court has "at least some responsibility for this 'regrettable'
delay." United States v. Carpenter, 781 F.3d 599, 612 (1st Cir.
2015) (finding that a delay of over two years while motions were
under advisement was result of negligence, and not bad faith on
the part of the prosecution or the district court).

On balance, having evaluated all the sources of the delay, the Court concludes that the Defendants contributed more to the length of the delay than the Government.

**C. Assertion of the Speedy Trial Right**

"The third factor, the defendant's assertion of his speedy trial right, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" Santiago-Becerril, 130 F.3d at 22 (quoting Barker, 407 U.S. at 531-32). A defendant needs to "give some indication . . . that he wishes to proceed to trial." Santiago-Becerril, 130 F.3d at 22.

Prior to the instant *Speedy Trial Motion*, Mr. Nibbs made two requests through counsel to expedite proceedings. (Docket Nos. 70 and 77). In them, he specifically requested a status conference to "move the case towards a plea or trial" and "move the case forward." (Docket Nos. 70 ¶ 3 and 77 ¶ 4, respectively). Thus, this factor weighs in favor of Mr. Nibbs. *See* Souza, 749 F.3d at 83 (holding, nevertheless, that the third factor did not overcome the weight of the second and fourth factors and finding no Sixth Amendment violation occurred).

Notably, Messrs. Chalwell and Acosta did not join these requests. Thus, they demonstrated a "lack of enthusiasm for the speedy trial right which [they] now assert[]." Henson, 945 F.2d at

438. Their failure to request a speedy trial earlier now weighs against them. *See* <u>Santiago-Becerril</u>, 130 F.3d at 22.

**D. Prejudice to the Defendants**

Finally, the last factor "seeks to protect three interests: avoidance of oppressive pretrial incarceration, minimizing anxiety and concern, and limiting the possibility that the defense will be impaired." <u>Carpenter</u>, 781 F.3d at 614 (citations omitted). The Defendants bear "the burden of alleging and proving specific ways in which the delay" was unfair or prejudicial. <u>Perez-Cubertier</u>, 958 F.3d at 92. They have not done so in this case, so this factor does not weigh in their favor.

<u>First</u>, with regard to the Defendants' pretrial incarceration, it is worth noting that the First Circuit has already determined that nineteen months of pretrial incarceration "is insufficient to establish a constitutional level of prejudice." <u>Muñoz-Amado</u>, 182 F.3d at 63. The Court recognizes that Defendants allege that their pretrial conditions have been onerous due to poor conditions at Metropolitan Detention Center Guaynabo. However, they have offered no evidence in support of this claim in their *Speedy Trial Motion*. To the extent that Defendants wish to challenge the conditions of their pretrial detention, those claims should be litigated via either a habeas corpus petition or civil rights action. *See, e.g.*, <u>United States v. DeLeon</u>, 444 F.3d 41, 59 (1st Cir. 2006)

(indicating pretrial detainees should seek relief through habeas corpus mechanism); <u>Gonzalez-Fuentes v. Molina</u>, 607 F.3d 864, 873 (1st Cir. 2010) (same, but noting claim must proceed as civil rights action).

<u>Second</u>, Defendants only make a brief reference to anxiety and concern. They aver that they experienced difficult conditions while detained on a Coast Guard ship prior to arriving in this district, which left them with "traumatic emotional stress" that has caused "other mental health issues." (Docket No. 160 ¶ 10). The Sixth Amendment speedy trial right jurisprudence acknowledges that "considerable anxiety normally attends the initiation and pendency of criminal charges," and thus "only 'undue pressures' are considered" when evaluating prejudice. <u>Santiago-Becerril</u>, 130 F.3d at 23 (quoting <u>Henson</u>, 945 F.2d at 438). Because Defendants point to no evidence to support their contentions of emotional distress, they do not carry their burden to establish that their anxiety and concern has risen to the level of being prejudicial. <em>See</em> <u>Muñoz-Franco</u>, 487 F.3d at 61.

<u>Third</u>, the Court turns to the "most serious" of the three interests: the possibility of impairment of the defense. <u>Santiago-Becerril</u>, 130 F.3d at 23. This interest is key "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." <u>Id.</u> (citing <u>Barker</u>, 407 U.S. at

532). However, to establish prejudice in this arena, a defendant must specifically allege how his defense has been impaired. *See* Muñoz-Amado, 182 F.3d at 63 (finding no prejudice when the defendant did not delineate the alleged prejudice he suffered, the alleged unavailable witnesses, or what the witnesses would have testified to). Although Defendants here claim that the vessel and drug evidence has been destroyed, they do not explain how this evidence would contribute to their defense. Their claims are therefore too "conclusory" and "generalized" to establish prejudice. Muñoz-Amado, 182 F.3d at 63; Muñoz-Franco, 487 F.3d at 59.

After balancing the four Barker factors, the Court finds that the Defendants' Sixth Amendment speedy trial right has not been violated. Accordingly, request for dismissal with prejudice on Sixth Amendment grounds is **DENIED.**

### III. The Speedy Trial Act

Having determined that there was no violation of the constitutional right to a speedy trial, the Court next turns to the question of whether there was a statutory violation. "The Speedy Trial Act . . . is generally concerned with two periods of delay: delay in bringing an information or indictment after arrest," or pre-indictment delay, "and delay in commencing trial after information, indictment, or the defendant's first

appearance," or post-indictment delay. United States v. Spagnuolo, 469 F.3d 39, 40 (1st Cir. 2006). The post-indictment provision of the STA provides that:

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

The STA also "contemplates that certain periods of time will be excluded from the computation." United States v. Staula, 80 F.3d 596, 600 (1st Cir. 1996) (citing 18 U.S.C. § 3161(h)). Accordingly, a district court evaluating STA claims must first determine the total time elapsed awaiting trial, and then determine how many days should be excluded. Id. (citations omitted). If the post-indictment provision of the STA is violated, the indictment shall be dismissed on the motion of the defendant, either without or without prejudice. 18 U.S.C. § 3162(a)(2). The defendant has the burden of proof to support the motion for dismissal. Id.

## A. Aggregate Time Elapsed

At issue in this case is whether the speedy trial clock began to tick for Mr. Nibbs and Mr. Acosta on August 5, 2022, when they were arraigned, or on August 12, 2022, when Mr. Chalwell was

arraigned.[3] The First Circuit has made clear that in cases with multiple defendants, "the STA begins to run anew on the date of the last codefendant's arraignment." United States v. Barnes, 251 F.3d 251, 258-59 (1st Cir. 2001) (citing United States v. Baker, 40 F.3d 154, 159 (7th Cir. 1994)).[4] Thus, the STA's commencement date in this case is August 12, 2022, the date of Mr. Chalwell's arraignment. See United States v. Maxwell, 351 F.3d 35, 38 (1st Cir. 2003) (excluding the period of time between the arraignment of two co-defendants).

The speedy trial period ends on the date a defendant files a motion to dismiss under the STA. Staula, 80 F.3d at 601 (citations omitted). Defendants filed their pro se Speedy Trial Motion on October 19, 2023. (Docket No. 124). The date on which the motion was filed is also excluded. Staula, 80 F.3d at 601 (citing United States v. Rodriguez, 63 F.3d 1159, 1163-64 (1st Cir. 1995)). Thus,

---

[3] Defendants did not brief the issue of whether the speedy trial clock may have begun to tick on July 28, 2022, the day of the indictment, given that they had all previously had initial appearances before a magistrate judge in this district. Because Defendants did not raise this argument, the Court declines to address it here. See United States v. Laureano-Pérez, 797 F.3d 45, 58 n.6 (1st Cir. 2015) (noting that it is unclear why the parties began counting speedy trial days from the defendant's arraignment but concluding that any arguments about the starting point were waived because they were not raised).

[4] Barnes relies on the Supreme Court's interpretation of what was then section 3161(h)(7), "which permits a reasonable period of excludable delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 251 F.3d at 257 (internal quotation marks omitted). Congress subsequently amended the statute, and section 3161(h)(7) is now codified at section 3161(h)(6). See In re Robinson, 713 Fed. App'x 764, 766 n.3 (10th Cir. 2017).

the aggregate time elapsed for the purpose of this analysis is 432 days.

**B. Excludable Days**

In evaluating speedy trial motions, the Court looks to section 3161(h) to determine what time may be excludable. There are several categories of excludable time that are relevant in this case. First, any delay resulting from a proceeding concerning the defendant is excludable, including days during which the defendant appears before the Court. Santiago-Becerril, 130 F.3d at 16 (citing 18 U.S.C. § 3161(h)(1)).

Second, "delay resulting from any pretrial motion, from the filing of the motion through" either a hearing on or a disposition of the motion is excluded. 18 U.S.C. § 3161(h)(1)(D). The First Circuit has "read the term 'pretrial motion' broadly to encompass all manner of motions." United States v. Barnes, 159 F.3d 4, 11 (1st Cir. 1998). Additionally, since the Indictment in this case pertains to all three of the Defendants, any single defendant's "motion resulting in excludable time toll[s] the STA clock for his codefendants." Santiago-Becerril, 130 F.3d at 19 (collecting cases). The speedy trial clock is further tolled for "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H). A matter

is under advisement when "the court receives all the papers it reasonably expects." Barnes, 159 F.3d at 12 (citations and internal quotations omitted).

Third, the Court may toll the speedy trial clock by granting continuances if it finds that "the ends of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial." *See* 18 U.S.C. § 3161(h)(7)(A). The presiding district judge must affirmatively articulate the reasons for the continuance, either orally or in writing, and the findings must be entered into the record by the time the Court rules on the defendant's STA motion. United States v. Valdivia, 680 F.3d 33, 39 (1st Cir. 2012) (citing 18 U.S.C. § 3161(h)(7); Zedner v. United States, 547 U.S. 489, 507 (2006)). Although a "formulaic incantation of the 'ends-of-justice' language" is not mandatory, a trial judge must "articulate clearly the reasons" supporting a continuance. Valdivia, 680 F.3d at 40. The Court does not, however, need to "explicitly state its reasons for granting a continuance nor make a best interest finding if it is obvious and set forth in the motion for a continuance." United States v. Laureano-Pérez, 797 F.3d 45, 59 n.8 (1st Cir. 2015) (internal citation and quotation omitted).

i.   August 12-25, 2022 – Bail Hearing Continuance – Zero Non-excludable Days

Mr. Chalwell was the last co-defendant to be arraigned. At his arraignment hearing on August 12, 2022, his counsel requested a continuance of the bail hearing to allow the U.S. Probation Office to conduct a pretrial interview. (Docket No. 32). The presiding magistrate judge reset the bail hearing for August 25, 2022 because he found there was "good cause" for the continuance. Id.

August 12, 2022 and August 25, 2022 are excludable because Mr. Chalwell appeared before a magistrate judge on these dates for an arraignment and bail hearing, respectively. Additionally, the period between August 12, 2022 and August 25, 2022 is excludable because there was a pending defense motion on the issue of bail. See United States v. Bellucci, 737 F. Supp. 706, 708-09 (D. Mass. 1990) (holding that pretrial detention and bond motions are "pretrial motions" within the meaning section 3161(h)(1)(F), which is now codified at section 3161(h)(1)(D)). In the alternative, these two weeks are excludable pursuant to section 3161(h)(7) because the magistrate judge found good cause for the continuance—specifically, that it would benefit the Defendant to have time to meet with a probation officer. Thus, the **fourteen days** between and including August 12, 2022 and August 25, 2022 are **excludable**.

    ii.  <u>August 26-September 22, 2022 – Twenty-eight Non-excludable Days</u>

The Government concedes that the time between Mr. Chalwell's bail hearing and the status conference held on September 23, 2022, is not excludable. (Docket No. 149 at 10). Accordingly, the **twenty-eight days** between and including August 26, 2022 and September 22, 2022 are **non-excludable.**

    iii.  <u>September 23-October 30, 2022 – First Conference  - Zero Non-excludable Days</u>

On September 23, 2022, at the first status conference in this case, the Government stated that discovery had yet to be produced because a new case agent was being assigned; counsel for Mr. Nibbs and Mr. Acosta indicated that they were waiting for the discovery so they could discuss it with their clients. (Docket No. 38). Additionally, Mr. Chalwell moved for a medical evaluation, which was granted. <u>Id.</u> The Government also avers that defense counsel raised a possible jurisdictional issue, although this discussion is not reflected in the minute entry. (Docket No. 149 at 7). "After having heard the parties," the Court set a second status conference for October 24, 2022. (Docket No. 38). The status conference was later reset for October 31, 2022. (Docket No. 41).

The minute entry on the docket is silent as to whether the Court found that the ends of justice justified the continuance to October 31, 2022. The parties did not present transcripts of the

first status conference, so it is also undetermined whether the
Court made an oral pronouncement on the record regarding the same.
However, Defendants have the burden of proof to establish
violations of the STA. 18 U.S.C. § 3162(a)(2). Although Mr. Acosta
and Mr. Chalwell argued that there is no indication the STA was
tolled, (Docket Nos. 161 ¶ 13 and 162 ¶ 4), this contention alone
is insufficient to carry the burden of proof here. *See* United
States v. De La Cruz De Aza, 485 F. Supp. 2d 11, 12-13 (D.P.R.
2007) (holding that defendant who provided no analysis or formula
as to excludable periods had not substantiated his STA claim).
Thus, the Court assumes for the purposes of this motion that the
continuance of **thirty-eight days represents excludable time** under
section 3161(h)(7)(A).

> iv.  October 31-November 13, 2022 – Second Conference –
>      Zero Non-excludable Days

On October 31, a second status conference was held. (Docket
No. 42). The Government stated that discovery and plea offers had
been tendered, and Defendants indicated that they were planning to
file a motion to dismiss. Id. Accordingly, the Court set a briefing
schedule. Id.

Generally, delays resulting from the preparation of pretrial
motions are not automatically excludable, although they may be
excludable pursuant to section 3161(h)(7). United States v. Huete-

_Sandoval_, 668 F.3d 1, 4 (1st Cir. 2011) (citation omitted). As
with the prior status conference, it is not clear from the minute
entry whether the Court made an ends-of-justice finding, and the
parties have not submitted transcripts of the hearing. Because the
Defendants have not carried their burden of proof with regard to
a speedy trial violation as to this period of time, the Court
assumes for the purposes of this motion that the **fourteen days**
between October 31, 2022 and November 13, 2022 **represents**
**excludable time** under section 3161(h)(7)(A).

> v.   November 14, 2022-June 16, 2023 – Motion to Dismiss
>      – Ninety-six Non-excludable Days

On November 14, 2022, Defendants filed a motion to dismiss
the indictment for presentment delay ("_Motion to Dismiss_").
(Docket No. 43). Defendants also moved on December 6, 2022, for an
evidentiary hearing ("_First Hearing Motion_") regarding whether
jurisdiction over their vessel was proper pursuant to the Maritime
Drug Law Enforcement Act. (Docket No. 54). Briefing for both these
motions concluded on December 19, 2022, when the Government filed
its sur-reply,[5] attaching certificates of jurisdiction in support.
(Docket No. 59).

---

[5] The sur-reply was originally due on December 5, 2022. (Docket No. 53). The
Government missed this deadline and belatedly moved for an extension of time,
which was granted. (Docket Nos. 56 and 57). The First Circuit has noted that
the STA may be potentially abused when the government fails to timely respond
to motions. United States v. Rodriguez, 63 F.3d 1159, 1165 (1st Cir. 1995).
Although Mr. Nibbs previously raised the issue of the Government's untimeliness,

Defendants filed a second motion for a hearing ("*Second Hearing Motion*") on December 20, 2022. (Docket No. 60). The *Second Hearing Motion* re-raised the issue of defects in the waiver of jurisdiction evinced by the certificates, and the Court ordered the Government to file a response. Id. at 2; (Docket No. 62). The Government responded on January 3, 2023 with an exhibit that corrected a prior mis-filing in their sur-reply to the *Motion to Dismiss*. (Docket No. 66). The Court issued an order denying the *Second Hearing Motion* on January 23, 2023. (Docket No. 67).

The *Motion to Dismiss* and the *First Hearing Motion* remained pending, and on March 6, 2023, Mr. Nibbs filed a motion requesting a decision regarding the *Motion to Dismiss* and for a status conference to move the case forward. (Docket No. 71). The Court subsequently noted the motion, declaring that "[t]he motion to dismiss will be decided in due course," but did not rule on or set a date for the status conference. (Docket No. 72). On July 10, 2023, Mr. Nibbs renewed his request for a status conference, and on July 11, the Court denied the scheduling motion. (Docket Nos. 77 and 78). Finally, on July 20, 2023, the Court denied the *Motion to Dismiss* and the *First Hearing Motion*. (Docket No. 79).

---

(Docket No. 54 at 2), Defendants did not present the issue in their *Speedy Trial Motion*. Accordingly, the Court need not address whether the tardy sur-reply caused excludable delay in this particular case. *Cf.* Spagnuolo, 469 F.3d at 41 (holding there is no "obligation on the district court to raise speedy indictment claims in the absence of a motion by the defendant.")

The Government argues that the entire period from November 14, 2022 to July 25, 2023 should be excluded due to the pendency of the *Motion to Dismiss*. (Docket No. 149 at 10). Defendants contend that there were 133 non-excludable days from February 24, 2023 to July 10, 2023 because the speedy trial clock could not be tolled more than thirty days once submitted motions were fully briefed. (Docket No. 160 ¶ 9). For the reasons discussed below, the Court finds that a STA violation occurred during the pendency of the *Motion to Dismiss*.

Defendants' *Motion to Dismiss* and *First Hearing Motion* are pretrial motions. *See* Fed. R. Crim. P. 12(b)(3)(A)(ii) and (B) (listing motions alleging preindictment delay and defects in the indictment as types of pretrial motion). Accordingly, the **thirty-six days** between and including November 14, 2022, when the *Motion to Dismiss* was filed, and December 19, 2022, when the Government filed its sur-reply, are **excludable** pursuant to section 3161(h)(1)(D). Because the *Second Hearing Motion* was a pretrial motion, *see* Fed. R. Crim. P. 12(b)(3)(B), the **thirty-five days** between and including December 20, 2022, when the *Second Hearing Motion* was filed, and January 23, 2023, when the Court issued an order denying the *Second Hearing Motion*, is also **excludable** under section 3161(h)(1)(D).

Because the Government's response to the *Second Hearing Motion* included a necessary correction to its earlier sur-reply, the Court received all the reasonably expected papers for resolving the *Motion to Dismiss*, the *First Hearing Motion*, and the *Second Hearing Motion* on January 3, 2023. *See* United States v. Rodriguez, 63 F.3d 1159, 1163 (1st Cir. 1995) (citing United States v. Henderson, 476 U.S. 321, 329 (1986)). Typically, the speedy trial clock is then tolled for a period of not more than thirty days. *See* 18 U.S.C. § 3161(h)(1)(H). However, at least one circuit court has held "that in a case of multiple pretrial motions the limitation is not 30 days, but reasonable promptness." United States v. Tibboel, 753 F.2d 608, 612 (7th Cir. 1985), *abrogated on other grounds by* Bloate v. United States, 559 U.S. 196 (2010). The First Circuit has not directly held the same, although one panel "suspect[ed] the Seventh Circuit was correct" in deciding that a reasonable promptness standard applies when a court is faced with a bevy of pending motions. United States v. Anello, 765 F.2d 253, 257 (1st Cir. 1985). However, this case represents far fewer motions than contemplated by the First Circuit in Anello. *See* id. (indicating it would be "impossible for a court to decide 10 or 100 motions" within thirty days); United States v. Cheek, 3 F.3d 1057, 1067 (7th Cir. 1993) (holding "50 days is not an unreasonable amount of time for the district court to decide 24 pretrial

motions"). Accordingly, the STA could be tolled for thirty days, through February 3, 2023, but no further. In sum, the **eleven days** between and including January 24, 2023 (the day after the *Second Hearing Motion* was decided) and February 3, 2023 (when the thirty days permissible to keep the *Motion to Dismiss* and *First Hearing Motion* under advisement elapsed), are **excludable.**

By contrast, the **twenty-four days** between and including February 4, 2023 and February 27, 2023 **are non-excludable.** On February 4, 2023, counsel for Mr. Acosta filed an informative motion indicating that he would be outside of the jurisdiction from February 28, 2023 through March 7, 2023. (Docket No. 68). A motion for continuance based on counsel's unavailability is a sufficient reason to exclude time, and the Court need not make an explicit finding when the reasons are obviously set forth in the continuance motion. Laureano-Pérez, 797 F.3d at 58 n.8. Thus, the **eight days** that Mr. Acosta's attorney was unavailable between and including February 28, 2023 and March 7, 2023 are **excludable.**

On March 6, Mr. Nibbs filed a motion requesting a decision on the *Motion to Dismiss*, as well as the setting of a status conference. (Docket No. 70). A motion for a status conference is a pretrial motion that tolls the speedy trial clock. Barnes, 159 F.3d at 11. A trial judge must set a hearing within thirty days of the date of receiving all it needs to consider the request. Id. at

12. Accordingly, the speedy trial clock would have stopped on March 6, 2023 and resumed ticking on April 5, 2023. Thus, while avoiding double-counting excludable days already considered in the preceding paragraph, there were an additional **twenty-nine excludable days** between and including March 8, 2023 and April 5, 2023.

No further events were entered on the docket until June 16, 2023. (Docket No. 72). The **seventy-two days** between April 6, 2023 and June 16, 2023 **are non-excludable**. At this point, the speedy trial clock had long past run. The Government argued that, in addition to considering the pending Motion to Dismiss, the Court should exclude all the time between November 14, 2022 and July 25, 2023 because the Court had ordered an evidence inspection and because there was a need for continuity of its Government counsel. (Docket No. 149 at 10). However, these arguments are unavailing because the entries related to the evidence inspection and continuity of counsel were not filed on the docket until **after** June 16, 2023, when the seventy non-excludable days had already accrued. The Court therefore finds that the post-indictment provision of the STA was violated. Having done so, it declines to assess whether there were pre-indictment violations of the STA.

### C. Dismissal of the Indictment

The sanction for a violation of the STA is dismissal of the indictment. 18 U.S.C. § 3162(a)(2). A district judge may dismiss the indictment with or without prejudice. Id. In making such a determination, "the court shall consider . . . the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the STA] and on the administration of justice." Id. In the First Circuit, courts must also consider "whether the delay resulted in actual prejudice to the defendant." United States v. Scott, 270 F.3d 30, 58 (1st Cir. 2001). The pattern of case law makes clear that "dismissal with prejudice [is] a last and rare resort." United States v. Dessesaure, 556 F.3d 83, 85 (1st Cir. 2009). Having considered the relevant factors, the Court finds that **DISMISSAL WITHOUT PREJUDICE** is appropriate in this case.

### i.   The Seriousness of the Offense

The first factor, the seriousness of the offense, "centers primarily on society's interest in bringing the particular accused to trial." United States v. Hastings, 847 F.2d 920, 925 (1st Cir. 1988). "By their very nature, drugs-for-profit offenses are extremely serious." Id.; see also United States v. Brown, 770 F.2d 241, 244 (1st Cir. 1985) ("The distribution of a substantial amount of a hard drug like cocaine is a serious and grave offense against

society as a whole," weighing in favor of dismissal without prejudice).

In this case, Defendants are charged with multiple drug trafficking offenses, as well as jettisoning controlled substances subject to forfeiture. Because the indictment alleges possession with intent to distribute five kilograms or more of cocaine, the charged offenses carry a mandatory minimum of ten years and a maximum of life imprisonment. *See* 46 U.S.C. § 70506(a); 21 U.S.C. § 960(b)(1)(B); United States v. Worthy, 772 F.3d 42, 48 n.8 (1st Cir. 2014) (considering maximum penalties when evaluating seriousness of crime). Possessing large quantities of cocaine with intent to distribute, conspiracy to do the same, and jettisoning said cocaine are all serious crimes. Accordingly, the gravity of the charged offenses weighs heavily in favor of dismissal without prejudice.

ii.   The Facts and Circumstances Leading to Dismissal

The second factor of the dismissal analysis "focuses on the culpability of the delay-producing conduct." Hastings, 847 F.2d at 925. When it is the court or prosecutor who engages in conduct that causes the delay, the factor favors the defendant. Id. There is a scale of blameworthiness, with delay from "intentional noncompliance" or to "gain unfair prosecutorial advantage" weighing most heavily in favor of dismissal with prejudice,

"recurrent shortcomings" less heavily, and "administrative oversight" or "[r]andom negligence" the least heavily. Id.

Here, the sources of non-excludable delay time are in large part attributable to the Court. There was some delay before the first status conference was held, and the Court spent a significant amount of time before deciding the *Motion to Dismiss* and the *First Hearing Motion*. Additionally, Mr. Nibbs assiduously attempted to move the case forward by requesting a decision and a status conference on two occasions. Although the Government did request an extension of time on December 6, 2022, it averred in its motion that it needed the time to properly obtain information about jurisdictional waivers, and then filed its sur-reply in well in advance of the Court's deadline. (Docket Nos. 55, 58, and 59). Thus, there appears to be no evidence of prosecutorial bad faith. *See* Scott, 270 F.3d at 58 (finding that the facts and circumstances did not favor dismissal with prejudice when delay was largely due to the district court and there was now showing of bad faith on the part of the government); *see also* United States v. Franklin, 630 F.3d 53, 58 (1st Cir. 2011) (recognizing Scott was "squarely on point" in case involving months-long post-hearing delay before a decision was issued); Dessesaure, 556 F.3d at 86 (holding dismissal with prejudice was improper in case where district judge considered a motion to dismiss for eleven months).

The Court has also reviewed the remainder of the time since July 16, 2023. Defendants filed a second motion to dismiss as well as several discovery motions. *See, e.g.*, (Docket Nos. 88, 91, 113, 119). As of January 24, 2024, at least some of the discovery issues remained unresolved. *See* (Docket No. 158). Messrs. Chalwell and Acosta have also sought and received the appointment of new counsel. (Docket No. 150). Furthermore, because of a civil suit filed against the previous presiding judge resulting in his recusal, the case was transferred to the undersigned. (Docket No. 133).

On balance, the Court notes that Defendants have contributed to some of the overall delay in this case. *See* <u>Worthy</u>, 772 F.3d at 46 (finding against dismissal with prejudice when defendant "moved for certain continuances and acquiesced in others"); *see also supra* Section II.B. (considering reason for delay in Sixth Amendment speedy trial analysis). Given that Defendants have not made a showing of prosecutorial bad faith in this case and have never filed a motion to sever, dismissal with prejudice is not warranted based on the facts and circumstances of this case. <u>Id.</u> at 47.

### iii. <u>The Administration of the STA and of Justice</u>

#### a. *The Administration of Justice*

"[W]henever the STA's requirements are not met, the administration of justice is adversely affected. The STA

nevertheless asks the courts to consider the degree to which the administration of justice is harmed." Scott, 270 F.3d at 58. When a case has not yet proceeded to trial, "the administration of justice [is] not impeded by the need to carry out a retrial." Worthy, 772 F.3d at 47. Here, as in Worthy, the case has not yet proceeded to trial. Thus, the administration of justice is not adversely affected by a re-prosecution. *See also* Barnes, 159 F.3d at 17 (concluding that a second trial would not have a deleterious effect on the administration of justice).

b.   *The Administration of the STA*

As to the STA, it is clear that dismissal with prejudice would have a greater deterrent effect compared to dismissal without. Id. But the STA "would not long survive if administered to turn routine slips into permanent immunity for a defendant who may be quite dangerous." Dessesaure, 556 F.3d at 85. Moreover, the First Circuit has repeatedly emphasized that the sanction of dismissal without prejudice is not toothless, as it imposes significant costs on the government. Worthy, 772 F.3d at 48; Franklin, 630 F.3d at 59. Dismissal without prejudice is accordingly an appropriate remedy in this case.

iv.   Prejudice to the Defendants

Finally, the last factor to consider is whether the delay caused prejudice to the defendant. When evaluating prejudice, the

most important issues to consider is whether the delay caused "loss of witnesses or other impediments to obtaining a fair trial at a later date." Dessesaure, 556 F.3d at 86. Courts might also consider whether a defendant has begun to serve his sentence. Scott, 270 F.3d at 58.

Mr. Nibbs argues that he is prejudiced because of his long pretrial detention and contends that his detention conditions are oppressive and inhumane. (Docket No. 160 ¶¶ 11-13). He also claims that the delay has resulted in the destruction of the vessel and drug evidence and the provision of an incorrect video in discovery. Id. ¶ 13. Mr. Chalwell echoes Mr. Nibbs' claim of difficult pretrial conditions. (Docket No. 162 ¶ 7).

The Court acknowledges that the Defendants have been detained pretrial since July 22, 2022. However, they have failed to demonstrate prejudice in this case. *See also supra* Section II.D (evaluating prejudice based on Sixth Amendment speedy trial jurisprudence). Based on the representations of the Government, the vessel at issue has been destroyed. (Docket No. 158). It is unclear when the destruction occurred, and how the vessel itself may have contributed to their defense. The Court also notes that the Government proffers that there remains video and photographic evidence of the vessel. Id. Defendants have not offered evidence as to any prejudice, so this fourth factor cuts against dismissal

with prejudice. *See* <u>Worthy</u>, 772 F.3d at 47 (granting dismissal without prejudice even when defendant had been "been deprived of his liberty for a significant amount of time," but had failed to offer evidence demonstrating prejudice).

"Thus, the record reveals a serious crime, a somewhat lengthy but innocuous delay, a just sanction, and no harm to" the Defendants. <u>Franklin</u>, 630 F.3d at 59. The appropriate sanction in this case is **DISMISSAL WITHOUT PREJUDICE.**

## D. Detention Review

Section 3164 of the STA provides that a "person who is being held in detention solely because he is awaiting trial" must be tried "not later than ninety days following the beginning of such continuous detention," and "[n]o detainee . . . shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial." 18 U.S.C. § 3164. The ninety-day period is subject to the exclusions laid out in section 3161. *See* <u>id.</u> § 3161(b). The failure to begin trial within ninety days "shall result in the automatic review of the court" of the conditions of release. <u>Id.</u> § 3161(c).

Defendants appeared to reference a desire for a detention review pursuant to 18 U.S.C. § 3164 in Mr. Nibbs' reply. (Docket No. 160 ¶ 11). To the extent that reference was a motion to trigger review, that request is now **MOOT** given the Court's order to dismiss

the indictment without prejudice. In the case where "an indictment is dismissed upon the motion of a defendant, the dismissal is without prejudice, and the defendant is again detained awaiting trial, section 3164's 90-day clock restarts at the moment that the defendant is rearrested." <u>Worthy</u>, 699 F.3d at 665.

### IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the Defendants' *Motion to Dismiss Based on Violation of Statutory Speedy Trial Act* at Docket No. 124 is **GRANTED** as to purported post-indictment Speedy Trial Act violations and **DENIED** as to the Sixth Amendment speedy trial right claim and the request for dismissal with prejudice. The Indictment in this case at Docket No. 14 is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of February 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE